**Richmond**

ANNE L. (LANCASTER) HUBBARD

v.

COMMONWEALTH OF VIRGINIA

No. 1305-89-2

Decided April 9, 1991

COUNSEL

Henry M. Massie, Jr. (Robert G. Cabell; Sands, Anderson, Marks & Miller, on briefs), for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—On appeal of her conviction for involuntary manslaughter, the appellant, Anne L. Hubbard, contends that the trial court erred (1) in permitting reconstructed opinion evidence of her speed, and (2) in receiving this evidence although it was of a type not to be helpful to the jury. We find no error and affirm the judgment of the trial court.

Around midnight on March 17, 1989, Anne L. Hubbard, with her friend, Mary Hamilton, as a passenger, left a party and proceeded east on River Road toward Richmond. A friend of Miss Hubbard's, David Cox, overtook them and began "tailgating" Miss Hubbard's car. While Cox was very close behind her, Miss Hubbard hit her brakes. Then, as Cox attempted to pass her, Miss Hubbard accelerated, as a result of which Cox almost collided with an oncoming car. Miss Hubbard then began "tailgating" Cox who, at that point, was going 65-70 miles per hour. The speed limit was 45 miles per hour. Cox slowed to 55 miles per hour as he passed through some road construction. He then accelerated and pulled away from Miss Hubbard's car. Miss Hubbard accelerated and proceeded down a hill toward a curve before which there was a warning sign advising that speed be limited to 35 miles per hour. Miss Hamilton testified that at this point she was frightened and was hanging on to the passenger door with both hands. Miss Hubbard asked if she was scared, and she replied that she was. Miss Hubbard's car proceeded up a hill and around another curve on which it went out of control, passing first into

the westbound lane, then back into its own lane, and then back into the westbound lane where it struck an oncoming vehicle occupied by Susan Darr and Catherine Davis, both of whom were killed. These charges result from that collision.

John Senter was a passenger in a car being driven by his wife about 35-40 miles per hour westward on River Road. He testified that they were confronted by the headlights of a car coming toward them around a curve "extremely erratic . . . [T]he car was going very, very fast . . . [I]t was out of control and swerving left and right." The car crossed into the Senters' lane, and Mrs. Senter swerved to the right, avoiding a collision. The oncoming car swerved back into its own lane and then back into the westbound lane, colliding with the car occupied by Miss Darr and Miss Davis. Senter could not estimate the speed of Miss Hubbard's car, but said that it was "going too fast" and was "out of control."

Officer Roland Smith investigated the accident. Upon evidence of his training and experience, he was received by the court as an expert in accident investigation. Officer Smith observed and measured a 90 foot long "yaw" mark caused by the edge of the right front tire of the Hubbard car. This mark, which proceeded in a curve to the left, was described as marking the skidding of the tire, resulting from the centrifugal force generated by the vehicle's swerve to the left being greater than the traction or road holding capability of the tire on the roadway. Officer Smith measured a 45 foot chord across the beginning of the "yaw." He then measured the middle ordinate of that chord, the perpendicular distance from the midpoint of the chord to the arc which it defined, finding this distance to be five inches.

Steven Chewning, upon reciting his extensive training and experience and his qualification as an instructor in the field, was also accepted by the court as an expert in automobile accident reconstruction. He explained to the court how, using Smith's measurements, he had determined the radius of the initial portion of the yaw mark to be 607.8 feet, and he explained the derivation of the formula and the computations that went into this calculation. He then explained how, three days later, using police cars and equipment on River Road at the scene of the accident, he determined the coefficient of friction between automobile tires and the pavement to be .887. He testified that he performed these tests dupli-

cating road conditions as they were described by the witnesses at the scene of the accident. He explained the meaning and significance of the coefficient of friction and the factors and methods that went into its calculation. He explained that the weight of the vehicle equally influenced inertial force and traction, and thus canceled itself out as a factor in determining the coefficient of friction. He took into account the grade of the road and the banking effect resulting from the car swerving across the road. He testified that there was no evidence that the brakes had been applied on the Hubbard car, but said that this would have negligible effect, because the "yaw" resulted from the lateral sliding of the tire. He said that his experiments, performed by locking the wheels of police cars, were valid measurements of the coefficient of friction, because it was the sliding of the tire that was in question. Chewning's methods and conclusions were reviewed and approved by Dr. James Charles Wambold, holder of a doctorate in mechanical engineering, a professor of mechanical engineering at Penn State University, and the director of the Vehicle Surface Interaction Safety Program at the Pennsylvania Transportation Institute. Utilizing his findings as to the radius of the swerve and the coefficient of friction and employing a calculation which he explained, Chewning determined that Miss Hubbard's vehicle was traveling 89 miles per hour when it began its final fatal swerve to the left.

The defense called Sammie F. Lee and David Lee, both practicing professional engineers. The Lees generally acknowledged the validity of the measurements made by Smith and the methods employed by Chewning. They gave the opinion that in determining the radius of the "yaw," it would have been better to have measured a chord longer than 45 feet. They also questioned the accuracy of the measurement of the middle ordinate. However, neither they nor anyone else offered any evidence to contradict these measurements or disputed their accuracy or the resulting calculation of the radius of the arc. The Lees disputed Chewning's determination of the coefficient of friction. Employing tables which they said were authoritative, they calculated a lesser value. Using this value, and employing the same method utilized by Chewning, David Lee calculated the speed of Miss Hubbard's car at the beginning of the final swerve to be 65-70 miles per hour.

The speed of the Hubbard automobile was material to the issue of whether at the time of the accident it was being operated in a manner so flagrant, culpable and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury. Evidence which tended to prove that speed was relevant. *Shrader v. Commonwealth*, 2 Va. App. 287, 288-89, 343 S.E.2d 375, 376 (1986).

■ "It is settled law in Virginia that expert evidence is inadmissible on matters of common knowledge or those as to which the jury are as competent to form an intelligent and accurate opinion as the witness." *Grasty v. Tanner*, 206 Va. 723, 726, 146 S.E.2d 252, 254 (1966) (citations omitted). However,

[w]hen the question involved does not lie within the range of common experience or common knowledge, but requires special experience or special knowledge, then the opinions of witnesses skilled in the particular science, art, or trade to which the question relates are admissible in evidence. The general rule is that the opinions of experts or skilled witnesses are admissible in evidence in those cases in which the matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, for the reason that the subject matter so far partakes of the nature of a science, art or trade as to require a previous habit of experience or study in it to acquire a knowledge thereof. An expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation in a special calling give the expert knowledge of a subject beyond that of persons of common intelligence and ordinary experience. The scope of such evidence extends to any subject in respect of which one may derive special knowledge by experience, when his knowledge of the matter in relation to which his opinion is asked is such, or is so great, that it will probably aid the trier in the search for the truth. Whenever the facts stated, as well as knowledge of the facts themselves, depend on professional or scientific knowledge or skill not within the range of ordinary training or intelligence, conclusions may be testified to by an ordinary expert.

*Neblett, Adm'r v. Hunter*, 207 Va. 335, 339-40, 150 S.E.2d 115, 118 (1966).

■ "Whether a witness may qualify as an expert is a matter that rests largely in a trial court's discretion. The trial court's decision will not be disturbed on appeal unless it clearly appears that the witness was not qualified." *Spencer v. Commonwealth*, 238 Va. 295, 313, 384 S.E.2d 785, 796 (1989), *cert. denied*, 493 U.S. 1093 (1990) (citation omitted). The appellant does not challenge the decision of the trial court to permit Officers Smith and Chewning and Dr. Wambold to testify as expert witnesses. Indeed, such a challenge would be ill founded. The credentials which they presented abundantly supported that determination.

■ The fact that an expert's measurements, methods and determinations are challenged or contradicted, even by other experts, does not render inadmissible expert opinion based on those measurements, methods and computations. Those challenges and contradictions go to the weight of the evidence, not its admissibility, and raise factual questions to be determined by the jury. *See O'Dell v. Commonwealth*, 234 Va. 672, 696, 364 S.E.2d 491, 505, *cert. denied*, 488 U.S. 871 (1988).

Appellant relies on *Grasty v. Tanner*, 206 Va. 723, 146 S.E.2d 252 (1966), and *Thorpe v. Commonwealth*, 223 Va. 609, 292 S.E.2d 323 (1982). We find those cases to be inapposite.

In *Grasty*, an automobile left the road and struck a clump of locust trees. The trial court permitted an expert witness to estimate the speed of the automobile based upon the damage which it suffered in striking the trees. Holding that this evidence should not have been received, the Supreme Court noted that damage to a vehicle by impact is within the realm of ordinary appreciation and assessment and, thus, is not appropriate for expert opinion. It further noted that there were many factors which could have influenced the nature and extent of the damage but were not accounted for by the expert.

*Thorpe* involved a situation somewhat similar to this case. Utilizing measurements of "yaw" marks left by a truck and a "drag coefficient," an expert calculated and testified to the speed of the truck before the accident. The Supreme Court noted that the determination of the "drag coefficient" resulted from experi-

ments conducted two months after the accident under conditions which were not shown to be the same as those which had prevailed at the time of the accident. The Court further noted that the expert had acknowledged that an overload on the truck could affect its balance and the way in which it would swerve, but had not taken into account that the evidence showed that at the time of the accident the truck was loaded 4,060 pounds over the legal limit. The Court held that "[r]esults of experiments are not admissible in evidence unless the tests were conducted under conditions which were the same or substantially similar in essential particulars to those existing at the time of the accident. The tests in the present case were made more than two months after the accident and there is no evidence of similarity in essential particulars." *Id.* at 613, 292 S.E.2d at 326 (citation omitted).

In *Swiney, Adm'x v. Overby*, 237 Va. 231, 377 S.E.2d 372 (1989), the Supreme Court held inadmissible the testimony of an expert calculating the distance during which a truck should have been able to stop, because there was no evidence as to the condition of the truck's brakes at the time. However, the Court said: "[E]xpert testimony is appropriate to assist triers of fact in those areas where a person of normal intelligence and experience cannot make a competent decision. But a predicate substantially duplicating each factor impacting on the original event must be established because of the significant weight the jury may give to this sort of testimony." *Id.* at 233, 377 S.E.2d at 374 (citation omitted).

The testimony challenged in this case came primarily from Officer Chewning. Chewning described in close detail the principles and considerations involved in the method which he employed. He explained the relevant factors and their relevance. He explained why other factors, such as weight, did not affect the computation. He asserted that he had considered and utilized all necessary and proper factors. On cross-examination, he explained in cogent terms his reasons for including or excluding various factors in his calculations. The body of information and scientific method which he presented was complete and afforded a full predicate to his conclusion. His calculations were challenged, but this challenge went to the weight to be given his conclusion, not its admissibility.

Smith's measurements and Chewning's calculations bore relevantly on a central issue in the case, the speed of the Hubbard

car. The matters as to which they testified were not within the realm of ordinary observation and assessment. Those measurements and computations were dependent upon particular and specialized scientific training and experience. This testimony illuminated matters as to which the jury could only have speculated blindly. It served the fact finding process by revealing truth in an important area of the case.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Barrow, J., and Cole, J., concurred.