COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


FREDERICK B. SMALLWOOD, S/K/A
 FREDERICK B. SMALLWOOD, SR.
                                    MEMORANDUM OPINION[*] BY
v.          Record No. 1616-96-1   JUDGE RICHARD S. BRAY
                                       FEBRUARY 17, 1998
COMMONWEALTH OF VIRGINIA

           FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                   Wilford Taylor, Jr., Judge

           Robert Moody, IV (Segall & Moody, on brief),
           for appellant.

           Daniel J. Munroe, Assistant Attorney General
           (Richard Cullen, Attorney General, on brief),
           for appellee.


     A jury convicted Frederick B. Smallwood (defendant) for

first degree murder and related use of a firearm.  On appeal,

defendant complains that the trial court erroneously (1) allowed

the Commonwealth to impeach its own witness, thereby exposing the

jury to impermissible hearsay,[1] and (2) refused to allow the

testimony of a defense witness relative to evidence introduced by

the Commonwealth during its case-in-chief.  We agree and reverse

the convictions.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

[1]We consider this issue together with defendant's contention
that the court erroneously denied his motion for a mistrial.

disposition of the appeal.

At approximately 1:50 p.m. on August 31, 1995, Hampton Police Officer John B. Proctor was dispatched to defendant's residence.  Upon arrival, Proctor found defendant standing outside the home, and his wife, Debra Smallwood (Debra), dead in an upstairs room, the apparent victim of a gunshot wound to the head.  A gun was resting between the victim's feet, the "muzzle point[ed] . . . outward . . . [and] handle pointed . . . away from the body," with a single shell casing near her foot.

Defendant stated to Proctor that Debra shot herself with the weapon following an argument between the two, later elaborating that she "got [his] gun off the desk and put it to her head and pulled the trigger."  Still later, defendant told police that he believed Debra had fired the gun accidentally, although she had previously expressed suicidal thoughts.  Following arrest, defendant inquired of police, "What if we were in an argument and we fought over the gun and the gun accidentally went off?," and answered affirmatively when asked "if that's what happened."

The autopsy revealed little, if any, blood on Debra's right hand and "minimal spatter" on her right arm.  The forensic testimony further established that the gun was fired with the muzzle against her skin while Debra was seated, leaving only a "slight leak on the upper part of the wound."  Gunshot residue samples (GSRs) taken from both defendant and Debra were negative.

Detective Kenneth Seals testified that shell casings ejected

from the weapon "usually go out a good distance into the air" and that the "casing [near Debra's foot] appeared . . . to be in an improper position.  The firearm appeared to be in an improper position . . . [a]nd based on those matters, . . . we conducted an investigation . . . as to whether or not this is an actual suicide, or . . . a death by some other means."  A firearms expert testified for the Commonwealth that testing of the weapon revealed that casings were "ejected over to the right and a little bit rearward."  This witness also testified that "different weapons [eject casings] different distances."  However, the trial court would not allow the testimony of defense witness, Peter A. Smerick, an expert "crime scene analyst," to explain the "improper" location of the shell casing.  The court also precluded introduction of the factual results of Smerick's test firings of the weapon to establish its precise ejection pattern and characteristics.

Other Commonwealth evidence disclosed that defendant was romantically involved with two women, Nancy Locke and Linda Norton, and received money from each, both before and after his marriage to Debra.  Norton continued to provide defendant approximately $400-$500 every two weeks until trial.  Called as a witness for the Commonwealth, she testified that her prior statements to investigators relative to Debra's death were "lies," coerced by police.  However, over defendant's repeated objections, the court permitted the Commonwealth to impeach

Norton through excerpts from a transcript of her police interview. The Commonwealth also introduced an audio tape of the interview, portions of which were actually played to the jury, including hearsay highly prejudicial to defendant.

The court later reconsidered its ruling and sustained defendant's objection to the interview and tape evidence, advising the jury:

> I have since . . . made a decision to sustain the defendant's objection to that tape, so the tape will not be played for your hearing. Now, there was a statement made in the tape attributed to Ms. Norton's mother that you heard. I'm going to instruct you to disregard that statement. You're not to consider that statement.

### I.  IMPROPER IMPEACHMENT

"Code § 8.01-403,[2] applicable in criminal as well as civil cases, allows impeachment of a party's witness with prior inconsistent statements after that witness has been found by the

---

[2]Code § 8.01-403 provides, in pertinent part:

> A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that he has made at other times a statement inconsistent with his present testimony; . . . . In every such case the court, if requested by either party, shall instruct the jury not to consider the evidence of such inconsistent statements, except for the purpose of contradicting the witness.

trial court to be adverse."[3] Ragland v. Commonwealth, 16 Va. App. 913, 920, 434 S.E.2d 675, 680 (1993) (citing Brown v. Commonwealth, 6 Va. App. 82, 85, 366 S.E.2d 716, 718 (1988)); see also Beverly v. Commonwealth, 12 Va. App. 160, 163, 403 S.E.2d 175, 176 (1991); Roberts v. Commonwealth, 230 Va. 264, 269, 337 S.E.2d 255, 258 (1985). Whether a witness is "adverse" rests with the trial court's sound discretion, see Virginia Electric & Power Co. v. Hall, 184 Va. 102, 105, 34 S.E.2d 382, 383 (1945), and the examining party must first obtain court permission to question the witness by cross-examination. See Ragland, 16 Va. App. at 920, 434 S.E.2d at 680.

On appeal, the Commonwealth correctly concedes that "the portion of Norton's testimony in which she was impeached by her prior statement to police was done improperly and was erroneously introduced." Indeed, the record clearly establishes that the Commonwealth failed to follow the provisions of Code § 8.01-403 and, further, that the court's limiting instruction was both untimely and inadequate.

## II. EXPERT TESTIMONY

"'It is well settled in Virginia that the opinion of an expert witness is admissible 'where the jury, . . . is confronted

---

[3] "A prior inconsistent statement is received in evidence exclusively to attack the credibility of the witness . . . [and] not evidence of the truth of the earlier account and the trial court, upon request, must instruct the jury accordingly." Royal v. Commonwealth, 234 Va. 403, 405, 362 S.E.2d 323, 324 (1987) (citations omitted).

with issues' that 'cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience . . . ."'" Hetmeyer v. Commonwealth, 19 Va. App. 103, 109, 448 S.E.2d 894, 898 (1994) (citations omitted). "The 'expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation in a special calling give the expert knowledge of a subject beyond . . . common intelligence and ordinary experience.'" Id. (citations omitted). However, "[w]e consistently have held that the admission of expert opinion upon an ultimate issue of fact is impermissible because it invades the function of the fact finder." Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992) (citing Bond v. Commonwealth, 226 Va. 534, 538, 311 S.E.2d 769, 771–72 (1984)); Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978); Webb v. Commonwealth, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963); Ramsey v. Commonwealth, 200 Va. 245, 249, 105 S.E.2d 155, 158 (1958).

Here, evidence introduced by the Commonwealth focused on the location of the shell casing, suggesting that it was inconsistent with suicide. In response, the defense offered Mr. Smerick as an expert to address such evidence with proper testimony beyond the scope or knowledge of the average juror. Thus, in barring Smerick's testimony, the court permitted the Commonwealth to "open the door" to an issue with incriminating evidence but

refused defendant an opportunity to respond with competent evidence. Defendant's criminal culpability in Debra's death was the ultimate issue before the court, and the position of the ejected shell casing was a circumstance relevant to that determination.

### III. HARMLESS ERROR

> While an error committed in the trial of a criminal case does not automatically require reversal of an ensuing conviction, Code § 8.01-678, once error is established it is presumed to be prejudicial. The burden then shifts to the Commonwealth to show that the error was non-prejudicial. A criminal case will be reversed if the Commonwealth fails to overcome the presumption of prejudice and fails to show that the error was harmless beyond a reasonable doubt.

Pavlick v. Commonwealth, 25 Va. App. 538, 544, 489 S.E.2d 720, 724 (1997) (citations omitted). "To determine whether an error is harmless, this Court 'must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues.'" Charity v. Commonwealth, 24 Va. App. 258, 265-66, 482 S.E.2d 59, 62 (1997) (citation omitted). "Non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that,' 'had the error not occurred, the verdict would have been the same.'" Id. (citations omitted).

The Commonwealth's instant case was entirely circumstantial. Much of Norton's impermissible hearsay and related evidence was not otherwise established in the record, and the jury obviously

- 7 -

considered her testimony important,[4] notwithstanding the court's inadequate limiting instruction.  The gravity of this error was compounded when the court disallowed defendant's proper evidence with respect to the ejection and position of the shell casing, leaving unrebutted an inference from the Commonwealth's evidence that the location was inconsistent with suicide.  Such rulings clearly prejudiced the defendant, and we are unable to find that the cumulative effect was harmless.

Accordingly, we reverse the convictions and remand the case for such further proceedings as the Commonwealth deems appropriate.

<u>Reversed and remanded.</u>

---

[4]Of four inquiries submitted by the jury to the court during deliberations, three related to Norton's testimony.