# CIRCUIT COURT OF SOUTHAMPTON COUNTY

Commonwealth of Virginia

   v.

Terry Wiggins

October 10, 2000

Case No. CR00-386

BY JUDGE D. ARTHUR KELSEY

The Commonwealth accuses Terry Wiggins of possession of cocaine with intent to distribute in violation of Va. Code Ann. § 18.2-248 (Michie Supp. 2000). With the concurrence of the Commonwealth, Wiggins waived his right to a jury trial and submitted the case to the Court for a decision. For the following reasons, the Court concludes that the evidence lacks sufficient persuasive force to warrant a finding of guilt beyond a reasonable doubt.

On June 29, 1999, Officer Kevin Johnakin and Detective Michael Darden received a tip that the defendant, Terry Wiggins, was "coming into the County of Southampton carrying narcotics in a vehicle." Trial Transcript at 16 (Sept. 19, 2000). The tip came from an informant who identified Wiggins by name and described his vehicle as a red Ford Mustang with a license plate number YXS-4643. *Id.* at 17, 54-55. The officers found Wiggins driving the Mustang down Route 258 heading toward Southampton. *Id.* at 19-20. They stopped the Mustang, with Johnakin coming to the driver's side and Darden approaching the passenger side. *Id.* at 20, 56, 112.

Wiggins identified himself, as did his passenger, Roderick Whitfield. *Id.* at 20-22. The officers questioned Wiggins and discovered that he did not have

an operator's license. Wiggins explained that he in fact owned the Mustang, even thought it was registered in the name of his girlfriend's father. *Id.* at 23, 57, 98, 110. The officers took Wiggins into custody, placing him in the back of a marked police cruiser that had arrived as back-up. *Id.* at 24. The officers searched Wiggins, but found no narcotics, smoking paraphernalia, or unusual sums of money. *Id.* at 47, 51-52, 114.

Detective Darden searched Whitfield, the passenger, and "recovered a piece of Brillo pad that had suspected cocaine resid[ue] on it." *Id.* at 25. Whitfield admitted he used the Brillo pad "to smoke cocaine with." *Id.* at 47, *see also id.* at 77-78. The officers then placed Whitfield in the front seat of Officer Johnakin's unmarked vehicle. By this time, the vehicles were in a straight line on the side of Route 258 — with the Mustang first in line, Johnakin's unmarked vehicle (occupied by Whitfield) second, and a marked police cruiser (occupied by Wiggins) third. *Id.* at 113-14.

Officer Johnakin then went back to search the Mustang. He "looked underneath the front passenger seat and saw a plastic bag that contained a large amount of suspected crack cocaine." *Id.* at 26, *see also id.* at 29. Johnakin then showed Detective Darden the "plastic bag that contained suspected crack cocaine." *Id.* at 59. Johnakin "held it up" for Darden to see, who was at that time on the other side of the vehicle. *Id.* at 64. Johnakin explained to Darden that he found the drugs "on the passenger side of the vehicle." *Id.* at 71.

Officer Johnakin remembers walking back (without the cocaine) to question Wiggins seated in the police cruiser. Wiggins initiated the conversation by volunteering, "[t]hat's not mine." *Id.* at 26. Johnakin replied, "what is not yours?" Wiggins answered, "[w]hatever you found." *Id.; see also id.* at 46. Johnakin then went back to the Mustang and placed the cocaine in an evidence container. *Id.* at 26. The cocaine weighed approximately fifty-five grams and had a street value of about $2,000 wholesale and $5,500 retail. *Id.* at 63. At some point later, the officers placed the bag on "some portion" of the Mustang. *Id.* at 70; cf. *id.* at 72 (narcotics "were on the top of the car").

Detective Darden, on the other hand, recalls Officer Johnakin taking possession of the cocaine immediately after showing it to Darden. *Id.* at 72. The next time Darden saw the cocaine, it had been placed on the back of the Mustang. *Id.* Darden also recalls talking directly with Wiggins but does not remember overhearing any dialogue between Officer Johnakin and Wiggins. *Id.*

Though Whitfield confirms some of the testimony of the two police officers, he adds additional and often conflicting details. Whitfield denied knowing anything about the cocaine found under his passenger seat. *Id.* at 74-

75, 78. But he distinctly remembers one of the officers holding up cocaine, apparently just after its discovery, and announcing to Whitfield "I've got you" or words to that effect. *Id.* at 79-84, 91-92. At the time this occurred, Whitfield also recalls Detective Darden standing beside him at the unmarked police vehicle. *Id.* at 83. The officer who found the cocaine, Whitfield contends, then placed the cocaine on the trunk of the Mustang for photographing. *Id.* at 83-84.

Wiggins agrees with Whitfield that one of the officers held up the bag of cocaine and gestured accusatorially to Whitfield. *Id.* at 114-15. Wiggins then saw Officer Johnakin place the cocaine on the trunk of the Mustang and then walk over to speak to him. *Id.* at 115. Wiggins agrees that he volunteered the statement "that's not mine," but claims he did so after Officer Johnakin "nodded his head" at Wiggins. *Id.* at 115-16. Having seen Johnakin discover something during the search of the Mustang, Wiggins contends, he wanted to make clear that whatever it was, it was not his.

Several people drove the Mustang in the days and weeks prior to the arrest, including both Whitfield and Wiggins, as well as Wiggins's brother, girlfriend, and nephew. *Id.* at 84-85, 99-108. Whitfield had driven the Mustang the night before his arrest, as had Wiggins's sister. *Id.* at 85, 99. Neither admitted, however, to any knowledge of cocaine being hidden under the passenger seat of the vehicle.

The Commonwealth later obtained indictments against Whitfield for possession of cocaine (the residue found on the Brillo pad) and against Wiggins for possession of cocaine (the bag of cocaine under the passenger seat) with intent to distribute. *Id.* at 44. Wiggins raised at trial a suppression motion, which the Court denied as both untimely and without merit.[1]

The police found the cocaine in the defendant's car, not on his person. Having no evidence of physical possession, the Commonwealth must establish constructive possession. *See Womack v. Commonwealth*, 220 Va. 5, 7, 255 S.E.2d 351, 352 (1979). To do so, it must be shown that the defendant knew of the "presence and character" of the contraband and exercised some degree of dominion and control over it. *Wells v. Commonwealth*, 32 Va. App. 775, 781, 531 S.E.2d 16, 18 (2000) (quoting *Castaneda v. Commonwealth*, 7 Va. App. 574, 583, 376 S.E.2d 82, 86 (1989) (*en banc*)). In short, "the Commonwealth must prove that the defendant knew *what* the substance was,

---

[1] See Va. Code Ann. § 19.2-266.2 (Michie 2000) (absent a showing of "good cause" consistent with "the interest of justice," suppression motions must be filed at least seven days before trial and argued at least three days before trial); *see also* Trial Transcript at 7, 33-40 (Sept. 19, 2000).

that he knew *where* it was, and that he was asserting dominion over it." Roger D. Groot, *Criminal Offenses and Defenses in Virginia*, at 142 (4th ed. 1998) (emphasis in original).

Mere proximity to the controlled substance, standing alone, falls short of establishing possession. *See Womack*, 220 Va. at 7, 255 S.E.2d at 352. "The possession crimes," Professor Groot reminds us, "are *not* strict liability crimes." Roger D. Groot, *supra* at 142 (emphasis in original). And the "difficulty of proof" in constructive possession cases is "compounded by the statutes, which specifically provide that control of the place in which the drugs were found creates no presumption that the controller knew of or intended to possess the drugs." *Id.* at 143. As Virginia Code Ann. § 18.2-250(A) declares, "ownership or occupancy of premises or vehicle upon or in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance." That so:

> [w]hen drugs are found in an automobile, the Commonwealth must place the defendant in immediate or recent control of the automobile and must present additional circumstantial evidence that the defendant knew the drugs were present, knew what they were, and was exercising dominion.

Roger D. Groot, *supra* at 143 (citations omitted).[2]

It must be emphasized, however, that subjective knowledge may be shown by objective evidence of the acts, statements, or conduct of the accused. *See Wells*, 32 Va. App. at 781, 531 S.E.2d at 19 (citation omitted). This proximity-plus standard supports convictions where circumstantial evidence shows, for example, that the defendant had been seen earlier in actual physical possession of similar, if not identical, drugs, *Armstrong v. Commonwealth*, 29 Va. App. 102, 114, 510 S.E.2d 247, 253 (1999); disclaimed any knowledge of the drugs before anyone had disclosed to him that the drugs had been discovered, *Glasco v. Commonwealth*, 26 Va. App. 763, 497 S.E.2d 150 (1998); had in his possession a large amount of cash, a pager, or drug paraphernalia, *White v. Commonwealth*, 24 Va. App. 446, 482 S.E.2d 876

---

[2] A defendant's possession need not be exclusive. Joint possession can — and often does — exist in cases involving drug offenses. *See Ritter v. Commonwealth*, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970); *see also Eckhart v. Commonwealth*, 222 Va. 447, 450, 281 S.E.2d 853, 855 (1981). In this case, the Commonwealth does not assert that Wiggins jointly possessed the cocaine with Whitfield. The Court, therefore, will not address the application of joint-possession principles to the facts of this case.

(1997); *Hetmeyer v. Commonwealth*, 19 Va. App. 103, 448 S.E.2d 894 (1994); tried to disrupt the search and throw off the likely discovery of the drugs, *Hardy v. Commonwealth*, 17 Va. App. 677, 440 S.E.2d 434 (1994); nervously disclaimed any reason for police to search underneath her seat (under which was later found a large cache of drugs), *Lane v. Commonwealth*, 223 Va. 713, 292 S.E.2d 358 (1982); had the drugs and associated smoking equipment in plain view and within immediate access, *Hamilton v. Commonwealth*, 16 Va. App. 751, 433 S.E.2d 27 (1993); or took to flight in a manner suggesting a guilty conscience, *Harmon v. Commonwealth*, 15 Va. App. 440, 425 S.E.2d 77 (1992).

Coupled with the proximity-plus principle is the overarching role of circumstantial evidence and its rightful, but understandably cautious, acceptance by the factfinder. As the Virginia Court of Appeals has put it, circumstantial evidence is:

> sufficient to prove guilt beyond a reasonable doubt so long as "all necessary circumstances proved . . . [are] consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence." The Commonwealth "need not affirmatively disprove all theories which might negate the conclusion that the defendant . . . [possessed the drugs], but the conviction will be sustained if the evidence excludes every reasonable hypothesis of innocence."

*McNair v. Commonwealth*, 31 Va. App. 76, 86, 521 S.E.2d 303, 308 (1999) (*en banc*) (citations omitted). In other words, circumstantial evidence fails "if it engenders only a suspicion or even a probability of guilt. Conviction cannot rest upon conjecture." *Haskins v. Commonwealth*, 31 Va. App. 145, 151, 521 S.E.2d 777, 779 (1999) (quoting *Littlejohn v. Commonwealth*, 24 Va. App. 401, 414, 482 S.E.2d 853, 859 (1997), and *Hyde v. Commonwealth*, 217 Va. 950, 955, 234 S.E.2d 74, 78 (1977)). For a recent overview of these principles in a drug possession case, see *Harrison v. Commonwealth*, No. 1973-99-1 (Va. Ct. App. Aug. 8, 2000) (unpublished op. at <http://www.courts.state.va.us/opinion/1973991.doc>), *rev'g* No. CR99-138 (Suffolk Cir. Ct. Aug. 24, 1999).

The Commonwealth argues that it has sustained its burden. After all, Wiggins drove the car that contained a wholesale size (pre-distribution) stash of cocaine. And he volunteered "that's not mine" in a suspicious manner, arguably permitting the inference that he knew the police officer had found the cocaine and spontaneously wanted to disassociate himself from it. Perhaps, by

itself, this evidence could lead a rational fact-finder to conclude guilt has been established beyond a reasonable doubt.

Other facts in this case, however, limit the inferential reach suggested by the Commonwealth. To begin with, the police found no incriminating evidence (*e.g.*, drug paraphernalia, digital scales, cutting blades, suspicious amounts of cash, or the like) on Wiggins or in his automobile. The police recovered the cocaine underneath the front passenger seat occupied by Whitfield. Whitfield had in his possession cocaine smoking materials and admitted to being a persistent user of cocaine. Himself charged with possession, Whitfield had an obvious motive to disclaim any knowledge of the cocaine located just beneath his seat.

Moreover, despite the fact that the evidence permits various competing inferences, multiple individuals, including Whitfield, had used the vehicle in the days and weeks prior to the arrest of Wiggins. His friends and family members may have placed the cocaine in the vehicle, though admittedly this seems unlikely given the amount of cocaine. To make matters worse, the evidence involving the initial discovery of the cocaine lacks clarity or consistency. From the collective recollections of the witnesses, it appears likely that Wiggins saw Officer Johnakin pull something incriminating from underneath the passenger seat. Conceivably, this could have prompted a spontaneous assertion of innocence (as Wiggins contends) as well as one of self-indictment (as the Commonwealth argues).

As for the information presented by the informant to the police, the Court cannot rely upon it. The Commonwealth introduced this hearsay evidence for the sole purpose of demonstrating that probable cause existed for the traffic stop of the vehicle driven by Wiggins.[3] The Commonwealth did not present any testimony from the informant or introduce any corroborating evidence underlying the informant's suspicions. As a result, none of this information is available to the Court.

The evidence in this case falls short of removing every reasonable hypothesis consistent with innocence. To see this case as mandating a conviction, one must build inference upon inference — all with the goal in mind of establishing guilt. The Court must do just the opposite; it must uphold the presumption of innocence until toppled forcibly by evidence removing any

---

[3] Wiggins objected at trial to Officer Johnakin's retelling of the informant's information. *See* Trial Transcript at 18. The Commonwealth conceded the evidence was hearsay but contended that the information was nonetheless admissible "not for the truth of the matter asserted" but for purposes of establishing "probable cause" and the "right to search the defendant." *Id.* at 18-19. The Court allowed the testimony for this limited purpose. *Id.*

reasonable doubt as to the defendant's guilt. In this case, the presumption stands intact — badly shaken, perhaps; but not overcome.

Given the prosecution's failure to establish the predicate offense of possession, the Court need not evaluate the evidence to determine whether Wiggins had a "specific intent" to distribute the cocaine, a finding that can be based upon "surrounding circumstances" such as the possession of a quantity greater than that ordinarily possessed by a mere drug user, the type of packaging, or the presence of a weapon. *See Clarke v. Commonwealth*, 32 Va. App. 286, 304-05, 527 S.E.2d 484, 493 (2000); *see also Hunter v. Commonwealth*, 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973) (quantity factor); *Burchette v. Commonwealth*, 15 Va. App. 432, 436, 425 S.E.2d 81, 84 (1992) (weapon).

In sum, the Court finds the evidence lacks sufficient persuasive force to warrant a conviction of possession of cocaine with intent to distribute in violation of Va. Code Ann. § 18.2-248 (Michie Supp. 2000). That so, the Court dismisses the indictment with prejudice. It is so ordered.