## Richmond

D<small>AVID</small> S<small>TOVER</small>, J<small>R</small>.

v.

C<small>OMMONWEALTH OF</small> V<small>IRGINIA</small>

October 16, 1981.

Record No. 801748.

Present: All the Justices.

*Michael Morchower (C. David Whaley; Morchower & Associates,* on brief), for appellant.

*Patricia L. Maslinoff, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

Convicted by a jury of second-degree murder and the use of a firearm in the commission of murder, the defendant, David Stover, Jr., was sentenced to a total of eight years' imprisonment. On

appeal, the sole question for decision is whether the convictions are supported by sufficient evidence.

The record shows that on the evening of March 7, 1980, a "social" was held at the home of Clarence Heiskill in an apartment complex in the City of Richmond. During the course of the evening, the defendant and several other guests engaged in "shooting a little dice." One of the players, Dean Taylor, "won the money," accumulating $200 - 300 in winnings. The defendant lost approximately $100, but he did not appear upset over his loss.

The game ended shortly after midnight. The defendant and Taylor departed, but the record does not show whether they exited together or, if separately, in what order. In any event, soon after Taylor left, two gunshots sounded outside, and a car without lights was observed speeding away from the scene.

Taylor's body, bearing two gunshot wounds, was found on the ground in front of one of the apartment buildings. Taylor's pockets contained "some change," but no currency.

The car observed leaving the scene was described by one Commonwealth witness as "a red Grand Prix with a white top" and by another as a "dark colored car with a light colored top." These witnesses were unable to state either the number or the identity of the car's occupants.

In the course of interviewing those present at the party, D. L. Houchins, a Richmond detective, questioned the defendant the day after the shooting. The defendant told Houchins he owned a 1976 Pontiac Grand Prix, maroon in color "with a half light-brown vinyl top," which he had driven to the party on the evening in question.[1] The defendant said he had arrived at the party sometime after 10:30 p.m. and had left at 1:00 a.m. He stated he observed no gambling while at the party.

During the interview, the defendant wore gloves, and Houchins asked him to remove them. The defendant first demurred and then complied, revealing a bandage on the index finger of his left hand. When the bandage was removed, Houchins observed a "raw burn or wound" on the finger. The defendant explained that he had burned himself with a soldering iron while "working on something" the day before, but he could not remember "what he was working on." ·

---

[1] The defendant consented to a police search of his automobile. Nothing incriminating was discovered.

Houchins told the defendant that the wound "looked like the results of a muzzle blast from a pistol being fired" and that he intended to test the defendant's hands for the recent firing of a weapon.[2] The defendant then said he had worked on "some dude's gun" the previous evening with a hot soldering iron. The defendant avowed that the "iron slipped and burned [his] finger and [he] accidentally squeezed the trigger of the gun and it almost blowed [his] finger off." The defendant stated he met "the dude," whose name he did not know but whose description he gave in detail, "way out in the boondocks" in Chesterfield County at a place he "could never find" again. The defendant informed Houchins further that, after leaving "the dude," he visited his girlfriend, who bandaged his finger before he went to the party at the Heiskill residence.

Two Commonwealth witnesses who were present at the party testified they observed nothing unusual about the defendant's physical appearance while he was engaged in the dice game. One of these witnesses was asked specifically whether he noticed anything unusual about the defendant's hands, and he replied negatively.

Testifying in his own behalf, the defendant denied killing Taylor. He said he told Detective Houchins no gambling took place at the party because he did not want to get his host in trouble. He stated he left the party at midnight, and he denied telling Houchins he departed at 1:00 a.m.

The defendant repeated, with some embellishment, his story about his excursion into the "boondocks" to repair "some dude's gun." This time, however, he produced "the dude" as a witness in the person of one Robert Johnson, whose actual description differed from the physical details the defendant had given Houchins in their interview. Johnson testified his gun was broken and the defendant was trying to repair it with a battery-powered soldering iron when the iron burned the defendant's hand and the gun accidentally discharged. Johnson said he threw the gun away and the defendant did the same with the soldering iron.

The defendant argues that the evidence against him is purely circumstantial and insufficient to support his convictions. The defendant says the burden is upon the Commonwealth to prove that the circumstances of motive, time, place, means, and conduct con-

---

[2] The test proved inconclusive.

cur in identifying him as the criminal agent. Under the evidence produced below, the defendant maintains, it "is just as likely that someone else at the social or a total stranger murdered the victim." The Commonwealth failed in its burden of proof, the defendant concludes, and he is entitled to reversal of his convictions.

The Attorney General agrees that the burden is upon the Commonwealth to prove that motive, time, place, means, and conduct concur in pointing out the defendant as the perpetrator of Taylor's murder. The Attorney General insists, however, that the Commonwealth has borne its burden.

The defendant was the "big loser" to Taylor in the dice game, the Attorney General asserts, and the defendant's motive for murdering Taylor, therefore, was robbery and the concealment of robbery. The Attorney General maintains the evidence established that the defendant left the party about the same time as Taylor and the description of the speeding car "matched the description of the defendant's car"; thus, the defendant was placed at the scene of the crime "at the precise moment" of the shooting. The Attorney General argues further the jury could infer that the defendant had the means to commit the murder because Taylor died from gunshot wounds and the defendant admitted the burn injury to his hand was sustained from firing a gun.

The defendant's conduct, the Attorney General states, is "more than sufficient" to support the jury's verdicts: the defendant sped away from the murder scene without lights burning on his car; he was in a position to hear the shots that were fired, yet failed to stop and render assistance; he had a fresh burn wound on his hand the next day, admittedly caused by the firing of a gun; he attempted to conceal the wound from Detective Houchins by wearing gloves; and he told a story which was "so inherently unbelievable that the jury was entitled to discredit the entire story [and the defendant's alibi], despite the defendant's corroborating witness."

Both the Attorney General and the defendant cite our decision in *Inge* v. *Commonwealth,* 217 Va. 360, 228 S.E.2d 563 (1976), as the benchmark against which we should measure the sufficiency of the evidence in this case. There, in a murder prosecution, the victim had accused Inge of burglarizing his home and had caused Inge's arrest. Shortly before the murder, the victim had testified against Inge at the preliminary hearing on the burglary charge, which was then certified to the grand jury. Inge had threatened

the victim and had been observed near the victim's home peering into the windows of apartments in the complex where the victim resided. On the night of the murder, a camper identical with one owned by Inge had been observed going down a dead-end street behind the victim's home, and a vehicle later was seen leaving by the same street at a high rate of speed. Inge admitted he had fired a shotgun the day the victim was killed, but he claimed he was shooting at blackbirds at his parents' home. Finally, Inge conceded he had returned from his parents' home by a circuitous route that took him past the victim's residence about the time of the murder. We affirmed Inge's conviction.

■ We believe the evidence in the present case fails to measure up to the *Inge* standard. We said in *Inge* that, where the evidence is circumstantial, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." We said further that "[t]he chain of necessary circumstances must be unbroken." 217 Va. at 366, 228 S.E.2d at 567. We do not believe that the circumstances of motive, time, place, means, and conduct concur in this case to form an unbroken chain linking the defendant to the murder of Taylor beyond a reasonable doubt.

The chain breaks down in its very first link. If the defendant's loss to Taylor in the dice game can be considered sufficient motive for murder, as the Attorney General contends, others than the defendant had a similar motive. Taylor won $200 - 300 in the dice game and the defendant lost $100; others, therefore, lost to Taylor to the extent of $100 - 200; Furthermore, one of the Commonwealth's own witnesses acknowledged that the defendant did not "get upset" over his loss. The record is absolutely silent concerning any harsh words, ill feelings, or bad blood between the defendant and Taylor.

Similarly, others than the defendant were in a position to murder Taylor at the same time and place as the defendant. The only factor distinguishing their situation from the defendant's is the testimony concerning the speeding automobile. But the witnesses' descriptions of the vehicle were vague and indefinite, and there was a complete lack of identification of the occupant or occupants of the car. Thus, the evidence was inconclusive that it was the defendant's automobile the witnesses observed leaving the scene of the murder.

Admittedly, the evidence concerning the circumstantial factors of means and conduct is on a higher plane than the evidence of motive, time, and place. But the fact that the defendant had a burn wound on his hand the day after the shooting and the possibility that he may have lied about the manner in which he sustained the injury do not constitute evidence sufficient to support a finding beyond a reasonable doubt that the defendant murdered Taylor. Even though, as the Attorney General suggests, the defendant may have committed perjury with his "boondocks" testimony, this circumstance alone is not sufficient to prove he sustained his burn wound while killing Taylor.

Viewed most favorably to the Commonwealth, the evidence concerning the defendant's conduct creates a strong suspicion that he was the criminal agent in Taylor's death. Suspicion, however, no matter how strong, is insufficient to sustain a criminal conviction. *Thomas* v. *Commonwealth,* 187 Va. 265, 271-72, 46 S.E.2d 388, 391 (1948). Because the circumstances here are suspicious only and do not exclude the reasonable hypothesis that someone other than the defendant killed Taylor, this prosecution fails.

For the reasons assigned, the defendant's convictions of murder and the use of the firearm in the commission of murder will be reversed and the indictments therefor dismissed.

*Reversed and dismissed.*