## Richmond

TYRONE EVERETTE BISHOP

V.

COMMONWEALTH OF VIRGINIA

Record No. 830119.

March 9, 1984.

Present: All the Justices.

*David E. Boone (Boone & Warren*, on brief), for appellant.
*Robert B. Condon, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

Tyrone Everette Bishop was convicted by a jury of first-degree murder, robbery, and the use of a firearm in committing each offense. Sentenced to life imprisonment plus seven years, he appeals, challenging only the sufficiency of the evidence to support the convictions.

The evidence, which we view in the light most favorable to the Commonwealth, was entirely circumstantial. The victim, Raymond A. Miller, was employed as a packer in a warehouse at the Defense General Supply Center at Bellwood, in Chesterfield County. He lived in northern Henrico County and commuted to work daily in his green Dodge. He was slightly retarded mentally and somewhat immature, but was open, friendly, and well-liked. He had no known enemies.

On Friday, May 15, 1981, Miller received his paycheck at about 7:00 a.m. at the warehouse. The check was for $487.71, an unusually large amount due to overtime he had worked. About 11:30 a.m., Miller took a lunch break and went to the office of a credit union, where he stood in line until his check was cashed. As he left, he showed his money to a union official whom he met in the hallway. This conduct was not unusual for Miller, who was thought by co-workers to be financially irresponsible. He was given to making irrational purchases and was often "broke" soon after payday. The union official saw the defendant, Bishop, standing near the door of the credit union when Miller emerged.

Bishop had been a co-worker in the warehouse, but had been absent from work for several months. He appeared at Bellwood, however, on May 15. He and Miller were on good terms. Bishop had no car and was dependent upon others for transportation. When the working day ended at 3:30 p.m. on May 15, Bishop left Bellwood with Miller as a passenger in Miller's green Dodge.

They were the only occupants of the car. A co-worker saw them together in the car at a traffic light on the Jefferson Davis Highway, near the Dupont plant north of Bellwood, at about 3:40 p.m. Miller was headed north toward Richmond. The two men were not seen together thereafter. This was the last time any witness saw Miller alive. Miller had been renting a television set from a firm on Hull Street in Richmond. He was expected there that afternoon to make a weekly rental payment, but he never appeared.

On Tuesday, May 19, at about 3:30 a.m., a Henrico County police officer saw the green Dodge parked in an isolated area on Tuxedo Boulevard, east of Richmond, in Henrico County, near the entrance to a dump. He noticed nothing unusual and did not examine it. On the following morning, Wednesday, May 20, at 2:40 a.m., he saw it still there, approached it, and looked inside with a flashlight. Miller's body was lying on the floor with his head on the passenger side. Bloodstains were visible, and papers were strewn about on the front seat. All four doors were locked. There were no car keys, wallet, or money in the car or in Miller's clothing.

Miller had been killed by two shots from a .38 caliber handgun, fired from Miller's right side, at a distance of less than three feet. The fatal bullets were recovered. Both had been fired from the same handgun, but the weapon which fired them was never found. The time of death was stipulated to have been in the evening of Friday, May 15. The body bore no defensive wounds and there was no sign of a struggle.

John Lee, age 14, who lived on Tuxedo Boulevard, had come home from a part-time job on the evening of Friday, May 15. He saw a green Dodge parked on Tuxedo Boulevard about fifty feet away from him. He could not see anyone in the car, but saw a black male standing outside on the driver's side. He had earlier seen a brown car parked in the same area, and someone lying underneath, working on it. The brown car left while it was still daylight, and he first saw the Dodge there just after dark. The sun set at 8:11 p.m. that day.

Lee was unable to identify the man he had seen outside the green car. When shown an array of photographs of black males, which included a picture of Bishop, he was unable to identify Bishop. Nearly six months later, Lee was shown a lineup of men, which included Bishop, at Henrico County Police Headquarters. Lee identified another man as the person he had seen standing by

the green car. A younger boy had been with Lee on the evening of May 15, but he was unable to identify anyone.

A fingerprint, which was identified as Bishop's, was recovered from the inside of the passenger door of Miller's car near the lock. A fingerprint found on a Sears' bill lying on the front seat was that of another person. A palm print was recovered from the outside surface of the driver's side of the car, near where John Lee had seen a man standing. It was not Bishop's.

Detective Ross Mise interviewed Bishop on August 14, after giving him *Miranda* warnings. Bishop told Mise that he had not been at Bellwood on May 15, but had spent the day at the house of a girlfriend, and that he had never been in Miller's car in his life. Bishop's mother's home was in Henrico County, slightly more than one mile from the place the car was found, but Bishop had been living elsewhere at the time and Mise had been unable to locate him for several months. Bishop persisted in his false alibi until trial, when he admitted that he had lied to Mise because he knew that rumors at Bellwood had connected him with the murder, and he was afraid.

Bishop testified that he had been discharged from employment at Bellwood because of frequent absences. The Internal Revenue Service had asserted a lien on his wages, which reduced his net pay to $50.00 per week. He could make more money working on a moving van and did so. This had caused his absence for several months. His employment at Bellwood was terminated effective May 15. He was owed $2,951.96 at Bellwood, however, as a re-fund of retirement benefits, and he testified that he went there on May 15 to collect it. He said that he rode a bus to the Dupont plant and then hitchhiked to the front gate of Bellwood. There, he obtained another ride to the warehouse where he worked, but by the time he arrived it was nearly 3:30 p.m. and the employees were leaving for home. He realized that it was too late to do the necessary paperwork that day, and that he would have trouble getting home unless he found a ride with someone he knew. He said that he met Miller in the parking lot, that they had been "real good friends," and that Miller offered to drive him to Hull Street, where Miller said he was going to visit a television rental firm. Bishop testified that he rode with Miller north on Jefferson Davis Highway to Afton Avenue, where Bishop left the car. He said that he was with Miller less than thirty minutes, and did not see Miller thereafter. He said that he became concerned about the

rumors he heard and "panicked," avoiding Bellwood thereafter* and giving a false account to the police. He denied seeing Miller at the credit union, said he never saw any money in Miller's possession, and stated that he had never owned a handgun.

■ We are guided by familiar principles. Where the evidence is entirely circumstantial, all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence. The chain of necessary circumstances must be unbroken. The circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt. *Stover* v. *Commonwealth*, 222 Va. 618, 623, 283 S.E.2d 194, 196 (1981); *Inge* v. *Commonwealth*, 217 Va. 360, 228 S.E.2d 563 (1976).

■ The evidence before us fails to meet these standards. Bishop's relationship with Miller was described by the witnesses as amicable, and there was no indication of any disagreement between them. If the motive was the theft of Miller's money, as the Commonwealth contends, it was shared by others. Miller was described by co-workers as particularly happy and talkative when he received his pay, frequently "flashing" it and displaying his purchases, however trivial.

■ The prosecution stands on still weaker ground as to the circumstances of time and place. Although Miller probably was killed after the car was parked on Tuxedo Boulevard, the evidence does not exclude the possibility that the car containing his body was driven there and abandoned after he had been shot elsewhere. Wherever the killing occurred, there is no evidence linking Bishop to that time and place. The jury could only speculate as to these circumstances.

As to means, there was no evidence linking Bishop with any weapon at all. If he was the criminal agent, the jury would have to speculate that he concealed a .38 caliber pistol on his person while at Bellwood, a matter which escaped the attention of the numerous witnesses who saw him there, fired it without being heard, and disposed of it without being seen. There was no evidence, direct or circumstantial, bearing upon any of these matters.

■ Bishop's subsequent conduct, and particularly his false account of his activities on May 15, are circumstances from which

---

* A check for $2,951.96 retirement refund was mailed to him in mid-August.

guilty knowledge might be inferred if his explanation of them is discarded. But as we held in *Stover*, such suspicious conduct does not constitute evidence sufficient to support a finding of guilt beyond a reasonable doubt. *Stover*, 222 Va. at 624, 283 S.E.2d at 197.

■ Here, as in *Stover*, the evidence as a whole, viewed most favorably to the Commonwealth, creates a strong suspicion that the defendant robbed and murdered the victim. But a suspicion of guilt, however strong, or even a probability of guilt, is insufficient to support a criminal conviction. *Id.*; *Webb v. Commonwealth*, 204 Va. 24, 34, 129, S.E.2d 22, 29 (1963).

For these reasons, the convictions will be reversed and the indictments dismissed.

*Reversed and dismissed.*