COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


KEN DERWIN DAVIS
                                 MEMORANDUM OPINION* BY
v.    Record No. 1637-99-2      JUDGE RUDOLPH BUMGARDNER, III
                                      AUGUST 22, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                       Robert W. Duling, Judge

            Patricia P. Nagel, Assistant Public Defender
            (David J. Johnson, Public Defender, on
            brief), for appellant.

            Donald E. Jeffrey, III, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Ken Derwin Davis challenges the sufficiency of the evidence

supporting his conviction of object sexual penetration.  The

defendant argues that the victim's testimony is inherently

incredible.  For the following reason, we reverse.

     When a defendant challenges the sufficiency of the

evidence, we examine the evidence that tends to support the

conviction and allow it to stand unless it is plainly wrong or

unsupported by the evidence.  See Commonwealth v. Presley, 256

Va. 465, 466, 507 S.E.2d 72, 72 (1998).  So viewed, the victim

rented a room in her apartment to the defendant, a first cousin.

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

The victim and some friends "were drinking in the New Year." The defendant was with them part of the time and repeatedly stated "he was going to get him some p_____" for the New Year. At 12:30 a.m., the victim and her two friends returned to her apartment where they drank gin until about 2:30 a.m. When the friends left, the victim retired to her bedroom and fell asleep on her bed fully dressed, still wearing her winter coat and boots.

The victim awoke as the defendant pulled her off the bed and she struck her head on the floor. The defendant dragged the victim by her feet into his room, threw her on his bed, and choked her. The defendant tried to insert his penis into her vagina, but she resisted. He then stuck his finger into her vagina one time while stating, "I told you I'm going to get some p_____ for the New Year."

The victim struggled to get free, knocked over and shattered a glass table in the defendant's room, and ran down stairs to call the police. She then ran back upstairs to Lola Horton's apartment where she told her neighbor and friend that the defendant had raped her. In a short time, Officer Thomas Gilbert arrived. The victim told him about the incident, but when asked "if he had penetrated her," she answered "no." The victim told Gilbert the defendant had his pants on but no shirt, and she denied the defendant took her clothes off. She made no complaint that he fondled or sucked her breasts. Gilbert noted

-

that the victim had been drinking and had a scratch above her lip.  He placed no charges.

Later that day around noon, the victim called a second officer to her apartment and complained that the defendant had sexually assaulted her.  Officer T. M. Arthur wrote out the victim's statement and read it back to her.  After reviewing it, the victim signed it.[1]  She said the defendant removed his pants and pulled her pants and underwear halfway down.  The defendant "stuck his finger into my vagina numerous times."  Arthur testified the victim said she did not understand the question when he asked whether the defendant had penetrated her with his penis.  After he explained the phrase in plain language, the victim said that she had not been penetrated with the defendant's penis.

---

[1] The entire statement, which Officer Arthur transcribed and the victim signed at 2:20 p.m. on January 1, 1999, reads as follows:

> I was watching t.v. in my room when [the defendant] came into my room [and] drug [sic] me into his room.  Once he got me into his room, he was undressing, groping me, beating and choking me.  He removed my bra and sucked my nipples.  He had part-way removed my pants and underwear.  During which time he stuck his finger into my vagina numerous times.  He never was able to get his penis inserted into my vagina.  There was a long struggle between us where I finally was able to get away and go next door to call the police.  During the choking I thought he was going to kill me; he probably would have killed me if I had not been able to fight him off.

-

Ordinarily, the fact finder may accept or reject a witness' testimony in whole or in part. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). However, the conclusions of the fact finder on issues of witness credibility "may . . . be disturbed on appeal if this Court finds that [the witness'] . . . testimony was 'inherently incredible or so contrary to human experience [or to usual human behavior] as to render it unworthy of belief.'" Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)).

The victim provided the only evidence of object sexual penetration because she was the only Commonwealth witness to the events that occurred at her apartment between the defendant and her. The Commonwealth presented that evidence by direct examination and through the victim's statements to her neighbor, Lola Horton, and to the two officers with whom she spoke on separate occasions. The facts gleaned from those four sources of evidence leave irreconcilable conflicts in essential elements and corroborating details.

Rape was the immediate complaint made to the victim's neighbor and friend, Lola Horton. When Officer Gilbert arrived the victim made no mention of rape, denied any penetration, and gave no indication of a sexual assault. By noon, she complained of digital penetration performed numerous times. From the

-

witness stand, she related a single instance of digital penetration.

The victim gave confused and contradictory explanations for the varied complaints. She told Officer Gilbert there was no penetration because she did not understand the term, "penetrate." However, she also claimed to understand the term to mean penile intrusion only. She maintained that she answered Officer Arthur's question about penetration correctly but only because he explained to her that the term meant penile penetration.

Similar internal confusion surrounds the exact nature of the initial complaint of rape. The victim testified that she told Horton, "I said Lola, don't you know Ken just raped me." She also maintains that she told Horton the defendant only "tried to rape" her. Horton maintains that the victim complained the defendant "had raped her."

The confusion continues when trying to determine the meaning that the victim attached to the terms she employed. She defined rape as an unwanted touching: "Don't touch me if I don't want to be bothered. Don't put your hands on me." Almost immediately, the victim testified the term "involves a penis penetrating." This conflict in usage illustrates an inherent conflict in the Commonwealth's evidence. If rape means an unwanted touching, then the victim understood that she had been raped when she complained to Horton of rape. However, she did

-

not complain of rape to anyone else.  If rape meant penile penetration, then she had not been raped when she complained that she had been.  This inherent discrepancy is unexplained, and there is no way to know in which sense she was comprehending the term when making her reports of the incident.

Inconsistencies appear in most of the details of the incident.  The victim said she was digitally penetrated numerous times, then said it happened only once, but she maintained both statements were correct.  The initial complaint to Officer Gilbert stated the defendant did not take his pants off and did not take her clothes off.  That complaint made no mention that the defendant pushed up her shirt and bra and fondled and sucked her breasts.  However, her subsequent statements to Officer Arthur, and those at trial, maintain that he did do that.  The victim initially testified that she was intoxicated, but later maintained that she was not.  She said she went to bed, but later said she lay across the bed to watch television and did not remember falling asleep.  The victim said the defendant was dragging her by her feet while choking her, but she cannot explain how he did that.  Later, she said he choked her after getting her to his bedroom.

The Commonwealth's evidence contradicted itself.  "We are not unmindful of the weight to be accorded a . . . verdict . . ., but we have repeatedly said we are not required to believe that which we know to be inherently incredible or

-

contrary to human experience or to usual behavior." See Willis v. Commonwealth, 218 Va. 560, 564, 238 S.E.2d 811, 813 (1977) (citation omitted). In this case, the issues arising from the evidence are not matters of credibility or of the weight of the evidence because the victim's statements are internally self-contradictory and do not permit reconciliation of the differences. There is no other source of evidence that could corroborate the crime or permit resolution of the inconsistencies in the victim's testimony. While there is evidence of a struggle, suspicion that the defendant may have sexually assaulted her is insufficient to sustain his conviction. See Stover v. Commonwealth, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981).

In oral argument, the Commonwealth conceded the evidence comprises inconsistent versions. The Commonwealth argued that two facts kept the evidence from being incredible: the victim made a recent complaint; and the defendant made statements of intent earlier in the day that corresponded to statements he made during the assault. However, the victim did not complain of the offense for which the defendant stands convicted. She complained of rape and never mentioned object sexual penetration until the third time she recounted the events.

The defendant did state while he was drinking with the victim and two other women that he intended to have sexual relations. The victim testified that he referred to that remark

-

during his assault on her. However, the remark does not help resolve whether he actually did the crime charged because the remark is equally applicable to rape and object sexual penetration. Additionally, when the defendant made the statement, he did not direct it at the victim or any other woman there.

The evidence of recent complaint and statement of intent are not sufficient to resolve the inherent inconsistencies in the Commonwealth's evidence and to permit a finding of guilt of object sexual penetration beyond a reasonable doubt. See Willis, 218 Va. at 563-64, 238 S.E.2d at 813 (rape victim's testimony is incredible as a matter of law where it is wholly uncorroborated, replete with contradictions and inconsistencies, and coupled with delay in reporting incident and an attempt to have the warrants withdrawn). Accordingly, we reverse the conviction.

Reversed and
final judgment.

-