COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Chaney and Senior Judge Haley
Argued at Richmond, Virginia


ROBERT LEE WEBSTER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0856-22-2                      JUDGE DANIEL E. ORTIZ
                                                    JUNE 20, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GREENE COUNTY
Claude V. Worrell, Jr., Judge

Paul C. Galanides for appellant.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Robert Lee Webster of second-degree murder, use of a firearm in the

commission of murder, and three counts of maliciously shooting at an occupied vehicle.  On appeal,

Webster contends that the trial court erred by granting the Commonwealth's motion *in limine*

seeking to exclude evidence of third-party guilt and that the evidence "failed to prove beyond a

reasonable doubt that [he] was the perpetrator and exclude the reasonable hypothesis that the crimes

were committed by another."  Finding no error, we affirm the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  In

doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence

---

* This opinion is not designated for publication.  *See* Code § 17.1 413.

favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On July 10, 2019, Brian Dudley left his mother's residence planning to sell "his zips," which, according to his girlfriend Melanie Kenney, was an illegal drug. As Dudley was driving, his long-time friend, Courtney Collier, saw him while traveling in the opposite direction. Collier turned around to follow Dudley and called his cell phone. The two spoke briefly, and Dudley told Collier not to follow him because he had "something to take care of." In response, Collier turned around and drove in the opposite direction. As he drove, he saw in his rear-view mirror that Dudley's car was stopped at an intersection with a "black car" behind him.

Dudley's cell phone records show that Webster called Dudley's phone minutes after Collier spoke with Dudley. Their call lasted two minutes and ended at 4:18 p.m. Two minutes later, Dudley's phone received an unanswered call from a contact listed in the phone as "G." Around 4:30 p.m., Aaron Spencer and his wife were driving on Fredericksburg Road when they saw a car parked on the side of the road. Spencer noted that it "was an unusual sight to see a car there on the side" because it was a rarely traversed road and the car was parked in a blind spot on a hill. Spencer slowed down, and as they drove past, he "saw a gentleman slumped over, leaning over to the right," piquing his interest. As he had his children in the car, Spencer kept driving but noted that the situation was "unusual." Minutes later, Jennifer Peters also drove by the parked car, saw "a black man slumped over to the side," and called 9-1-1.

Greene County Sheriff's Officer Leake arrived at the scene, approached the car, and saw Dudley "leaned back" in the driver's seat with blood coming from his ear and chin and "a baseball sized spot of blood on the left-shoulder area." Leake also saw two bullet holes in the driver's door and empty bullet casings on the roadway. An autopsy revealed that Dudley had been shot five times

and died from gunshot wounds to his head and chest. Testing demonstrated that six bullets and six casings recovered at the scene had been fired from the same weapon.

Phone records showed that Webster and Dudley communicated many times in the days before Dudley's death, including seven calls on the day Dudley was killed and sixteen calls on the previous day. Dudley and Webster also exchanged text messages, which were recovered from Dudley's phone. Testifying as an expert in historical cell site analysis, FBI Special Agent D'Errico explained that cell site records are used to "determine an approximate location of [the] phone at the time [the] record was created." He examined the records for the phones belonging to Webster, Dudley, and Collier. The data associated with Collier's phone corroborated his testimony that he was in the same area as Dudley shortly before his murder and that he turned around. Webster worked on the day of the murder and left his job after 3:00 p.m. His phone used cell towers near his place of employment during the day of the murder until 3:21 p.m., at which time the phone began traveling towards Webster's residence. Webster's phone was in the immediate area of the crime scene around the time Dudley was shot and killed, between 4:19 p.m. and 4:24 p.m. From 4:13 p.m. to 4:16 p.m., Dudley's phone used the cell tower at the intersection on Fredericksburg Road near where he was killed. Dudley's phone received unanswered calls until around 5:00 p.m. using the cell tower close to the crime scene. Meanwhile, Webster's phone traveled from the crime scene to the area of his residence in Orange County.

Greene County Sheriff's Investigator Murphy interviewed Webster on October 4, 2019, and the Commonwealth introduced the recording of the interview without objection. Webster made several inconsistent statements during the interview, including initially denying that he knew Dudley and then, when confronted with the phone records, admitting that he and Dudley had exchanged phone numbers. Webster acknowledged that he drove a dark gray Cadillac. Investigator Murphy also asked Webster about the car's changed wheels. Before July 2019, "the vehicle had a

set of chrome, shiny chrome after-market wheels on it." But when "surveillance was conducted and the vehicle was observed" after the date of the murder, "the wheels had been changed and there was a set of . . . stock Cadillac wheels on the vehicle." Sometime later, "the after-market wheels were put back on the vehicle." Webster also admitted that after the date of the murder, he did a "hard reset" on his phone, which, according to Investigator Murphy, "erases things that are in the memory and the storage on the phone."

Before trial, the Commonwealth filed a motion *in limine* seeking to exclude "alleged evidence of third-party guilt." The trial court took the matter under advisement and addressed the issue after the close of the Commonwealth's case. Webster proffered that he planned to call a fingerprint expert to testify that he gathered fingerprints from the "left door post" of Dudley's car and sent them to a laboratory. Webster further proffered that one of the fingerprints belonged to Israel Cox, who resided in California. Webster argued that because evidence in the record proved that the car was washed regularly, the presence of a fingerprint "suggests an agent of the victim's death." The Commonwealth argued that there was no evidence about when the fingerprint was placed on the car and nothing linked the fingerprint to the murder. The trial court ruled that the fingerprint evidence was "collateral and otherwise inadmissible."

The jury convicted Webster of second-degree murder, use of a firearm in the commission of murder, and three counts of maliciously shooting at an occupied vehicle. Webster appeals.

ANALYSIS

I.

Motion *in Limine*

"It is well-settled that '[d]ecisions regarding the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Blankenship v.*

*Commonwealth*, 69 Va. App. 692, 697 (2019)). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022).

"Although a criminal defendant has the right to 'call for evidence in his favor,' this right is 'not boundless.'" *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Jones v. Commonwealth*, 71 Va. App. 70, 89 (2019)). "In Virginia, evidence that a crime was actually committed by someone other than the accused is admissible for the purpose of generating a reasonable doubt of the guilt of the accused." *Juniper v. Commonwealth*, 271 Va. 362, 411 (2006) (quoting *Weller v. Commonwealth*, 16 Va. App. 886, 890 (1993), *aff'd on reh'g en banc*, 443 S.E.2d 171 (1994)). "Such proffered evidence need only raise a question for the jury whether reasonable doubt of [the accused's] guilt existed, not whether the proffered evidence was sufficient to prove a third person committed the offenses." *Ramsey v. Commonwealth*, 63 Va. App. 341, 355 (2014).

However, "[p]roffered evidence 'that merely suggests a third party *may* have committed the crime charged is inadmissible; only when the proffered evidence tends *clearly* to point to some other person as the guilty party will such proof be admitted.'" *Johnson v. Commonwealth*, 259 Va. 654, 681 (2000) (quoting *Soering v. Deeds*, 255 Va. 457, 464 (1998)). Therefore, "under decided Virginia case law, the right to present evidence in one's defense does not permit a defendant to introduce evidence that merely suggests or insinuates that the third party may have committed the crime." *Ramsey*, 63 Va. App. at 354. "Such evidence is irrelevant; it tends to confuse and mislead a jury unless 'evidence [has been] introduced . . . [that] point[s] directly to guilt of a third party.'" *Oliva v. Commonwealth*, 19 Va. App. 523, 527 (1995) (alterations in original) (quoting *Weller*, 16 Va. App. at 890). Thus, an accused may introduce evidence of third-party guilt "only 'where there is a trend of facts and circumstances tending clearly to point

out some other person as the guilty party.'" *Id.* (quoting *Karnes v. Commonwealth*, 125 Va. 758, 766 (1919)). Further, "[a]lthough circumstantial evidence tending to prove the guilt of a third party is to be liberally received, the evidence must be legally admissible. That is, the evidence must be relevant and material, and may not be hearsay." *Weller*, 16 Va. App. at 890 (citation omitted). Finally, "a large discretion must and should remain vested in the trial court as to the admission of this class of testimony." *Johnson*, 259 Va. at 681 (quoting *Karnes*, 125 Va. at 766).

Here, the Department of Forensic Science initially matched the fingerprint on Dudley's car to Cox, but after re-examination found the match "inconclusive." Webster sought to call his own expert to testify that the print "was properly matched to Cox." The Greene County Sheriff's Office investigated Cox and determined that no evidence suggested that he had been to Virginia. Here, the presence of the fingerprint—whether it belonged to Cox or not—does not "tend[ ] *clearly* to point" to Cox as the guilty party. *Johnson*, 259 Va. at 681. Instead, the evidence was attenuated, irrelevant, and immaterial. The presence of the fingerprint only suggests that Cox, assuming the fingerprint is properly attributable to him, touched the car sometime after Dudley last washed it. It does not demonstrate that Cox was at the scene of the offense, and it certainly does not demonstrate that he was involved in the offense. Indeed, the mere presence of the fingerprint, without any other circumstances, is insufficient to demonstrate a "trend of facts and circumstances tending clearly to point out [Cox] as the guilty party." *Oliva*, 19 Va. App. at 527 (quoting *Karnes*, 125 Va. at 766). Accordingly, the trial court did not abuse its discretion by determining that the fingerprint is not admissible as evidence of third-party guilt. Because such evidence is inadmissible to prove third-party guilt, we hold that the trial court did not abuse its discretion in excluding the proffered evidence.

II.

Sufficiency

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Webster asserts that he "had the opportunity to murder Dudley, but others did as well." He contends that "[o]ther than his presence nearby and his deception with the police there was scant evidence at all against" him. "At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)). As with any element

of an offense, identity may be proved by direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999).

It is well-established that in considering a sufficiency challenge, "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Id.* (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)).

The evidence proved that Dudley and Webster called each other 16 times the day before Dudley's death and multiple times on the day he was killed and had arranged to meet for a drug transaction, an event that is closely associated with firearms due to the danger inherent in the drug trade. *See Jones v. Commonwealth*, 272 Va. 692, 701 & n.3 (2006); *United States v. Grogins*, 163 F.3d 795, 799 (4th Cir. 1998) ("the connection between illegal drug operations and guns in our society is a tight one"). Dudley was killed minutes after he concluded his 4:18 p.m. phone call with Webster. Dudley's phone records indicated that he received an unanswered call at 4:20 p.m., and Spencer discovered him slumped in his seat around 4:25 p.m. Cell site data traced Webster's phone from his place of employment until 3:00 p.m. to near his Orange County residence 20 minutes later, when he received a call from Dudley. The phone then traveled from Orange County to Greene County, and the phone used a cell tower very close to the intersection where Dudley was killed around the time of the murder. A reasonable fact finder could conclude that Webster was with his phone and thus at the scene of the crime. Despite Webster and Dudley's plan to meet, Webster did not attempt to contact Dudley after the 4:18 p.m. call on the day of the murder, suggesting that Webster knew Dudley was dead. Immediately after the time

of Dudley's death, Webster's phone quickly traveled back to his residence. The evidence further proved that all the shots were fired from a single weapon, suggesting there was only one perpetrator.

When interviewed by the police, Webster initially denied knowing Dudley, but when confronted with the phone data, he admitted that the two had exchanged numbers. The text messages between the two indicate that they were more than mere acquaintances and that Webster planned to meet Dudley that day to purchase drugs. *See Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("[I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, *concealment*, assumption of a false name, and *related conduct* are admissible as evidence of consciousness of guilt, and thus of guilt itself." (alteration in original) (emphases added) (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991))). A reasonable fact finder could find Webster's inconsistent statements and false denial about knowing Dudley suggestive of his guilt.

Webster admitted that he drove a dark gray Cadillac, and Collier saw what he described as a black car behind Dudley's car minutes before Dudley was killed. The jury reasonably could have inferred that the car Collier saw was Webster's. Further, Webster changed the car's wheels around the time of the murder, which could reasonably suggest that he was attempting to conceal the fact that the car had been in the vicinity at the time of the murder. Finally, Webster attempted to erase data from his phone in what the jury reasonably could conclude was an attempt to hide the fact that he and Dudley had been communicating immediately before Dudley's death.

The dissent argues that the cell phone records could not precisely show that Webster was at the crime scene and that Collier's testimony was insufficient to prove that Webster's car was at the scene. "While no single piece of [circumstantial] evidence may be sufficient, the 'combined

force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "In other words, in a circumstantial evidence case, . . . the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" of a defendant's guilt. *Id.* Here, based on the combination of the cell phone records, Collier's testimony, Webster's multiple attempts to conceal his guilt, and the fact that he stopped contacting Dudley immediately after Dudley's death, the jury could rationally conclude beyond a reasonable doubt that Webster shot and killed Dudley.

CONCLUSION

For the foregoing reasons, we find that the evidence was sufficient to prove Webster's guilt beyond a reasonable doubt, and we affirm his convictions.

*Affirmed.*

Chaney, J., dissenting.

Considering the totality of the evidence in the light most favorable to the Commonwealth and granting the Commonwealth all reasonable inferences deducible from the evidence, no rational fact-finder could determine from the evidence who shot and killed Brian Dudley. Webster's murder and firearm convictions should be reversed because "[t]he record fails to point out the perpetrator of the crime with the clearness and certainty required by law." *Garner v. Commonwealth*, 186 Va. 600, 614 (1947) (quoting *Nelson v. Commonwealth*, 153 Va. 928, 934 (1929) (reversing murder conviction based on insufficient evidence)). Here, as in *Warren v. Commonwealth*, 144 Va. 669, 674 (1926) (reversing murder conviction based on mere suspicion), "[a]ll of the evidence for the Commonwealth may be true and yet the accused be not guilty." In holding that the evidence is sufficient to sustain Webster's convictions, the majority allows mere suspicion to substitute for proof beyond a reasonable doubt. But "suspicious circumstances and probability of guilt, no matter how strong, are insufficient to sustain a criminal conviction." *Rogers v. Commonwealth*, 242 Va. 307, 320 (1991). Because the totality of the evidence is insufficient for a rational fact-finder to find beyond a reasonable doubt that Webster committed or participated in the murder, I am compelled to dissent from the majority's judgment affirming Webster's convictions.

Where the evidence is wholly circumstantial, "[t]he chain of necessary circumstances must be unbroken. The circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain [that] links the defendant to the crime beyond a reasonable doubt." *Rams v. Commonwealth*, 70 Va. App. 12, 36 (2019) (alterations in original) (quoting *Bishop v. Commonwealth*, 227 Va. 164, 169 (1984)). Although the Commonwealth is not required to prove all of these circumstances in every case, "those circumstances which *are* proved must each be consistent with guilt and inconsistent with innocence, and . . . must *concur* in pointing to the

- 11 -

defendant as the perpetrator beyond a reasonable doubt." *Cantrell v. Commonwealth*, 229 Va. 387, 398 (1985).

The evidence does not support a finding that Webster was at the crime scene at the time of the murder.[1]  Contrary to the majority's recital and characterization of the evidence, the evidence does not support the findings that Webster's phone was at the scene of the crime and "Webster was with his phone and thus at the scene of the crime."  According to the Commonwealth's expert witness, the analysis of Webster's and Dudley's cell phone records from the day of the murder enabled the expert to determine the approximate location of each of their cell phones at the time a record of a call, text message, or email was created.  As the expert explained, the records enabled him to identify the cell tower and the sector or side of the cell tower that was used for a given call or message.[2]  From this information, the expert could determine that at the time of a given call or message, the approximate location of the cell phone was "somewhere within that sector or just on the outside of that sector."  But each sector covers a geographic area extending outward from the cell tower.  Although the expert explained that the cell towers at issue were up to six to eight miles apart and each sector spanned 120 degrees of a circular area surrounding its cell tower, there is no evidence of the square mileage covered by any sector of a cell tower.  Thus, in identifying the "approximate location" of Webster's cell phone around the time of the murder, the expert could not, and did not, conclude that Webster's phone was at the

---

[1] The evidence is also insufficient to support a finding that Webster had any motive to murder Dudley.  As in *Stover v. Commonwealth*, 222 Va. 618, 623 (1981), "[t]he record is absolutely silent concerning any harsh words, ill feelings, or bad blood" between the murder victim and the accused.  *See id.* (reversing convictions for murder and use of a firearm in the commission of murder due to insufficient evidence to support the jury's verdicts of guilt).  On the day of the murder, Dudley did receive text messages cursing at him and stating that the sender was done with him, but those messages were sent by Melanie Kenney, Dudley's girlfriend.

[2] The term *sector* is used to refer to each of the three sides of a cell tower and to the roughly pie-shaped geographical area served by each side of a cell tower.

*scene* of the murder. Rather, the "approximate location" of Webster's phone near the time of the murder was somewhere within the entire geographic area served by a cell tower *sector* that serviced the murder scene.[3] Therefore, no rational fact-finder could have found from the evidence that Webster's phone was at the crime scene at the time of the murder.

Additionally, the evidence does not support a finding that Webster's car was at the crime scene at the time of the murder. One of Dudley's cocaine customers, Courtney Collier, testified that while he was driving on the day of Dudley's murder, he saw Dudley's car stopped at a stop sign with a black car behind it. The majority opines that "[t]he jury reasonably could have inferred that the car Collier saw was Webster's." But there is no evidence that the black car observed by Collier traveled to the murder scene where Dudley's car was found. Moreover, there is no evidence that Webster was in the black car, nor that the black car was the same make or model as the car that Webster drove that day—a dark *gray* Cadillac. Given the evidence, the jury could not reasonably infer that the black car observed by Collier was Webster's car. *See Stover v. Commonwealth*, 222 Va. 618, 623 (1981) ("[T]he witnesses' descriptions of the vehicle were vague and indefinite, and there was a complete lack of identification of the occupant or occupants of the car. Thus, the evidence was inconclusive that it was the defendant's automobile the witnesses observed leaving the scene of the murder.").

In addition to the insufficiency of evidence to support a finding that Webster was at the crime scene at the time of the murder, there is no evidence that the firearm used to murder Dudley was ever in Webster's possession. Moreover, there is no evidence that Webster had access to such a firearm or that Webster had ever possessed or fired any firearm.

---

[3] The Commonwealth's expert witness explained that the geographically closest cell tower may not be the cell tower used for a cell phone connection due to intervening obstructions between the cell phone and that cell tower.

I agree with the majority that Webster's consciousness of guilt may reasonably be inferred from his false statements to the police and his attempt to conceal or destroy evidence on his cell phone. However, Webster's deception is amply explained by a desire to conceal his involvement with Dudley in illegal drug activity. Webster's text messages to and from Dudley indicate that Webster was arranging an illegal drug transaction. Given this, a rational fact-finder could not reasonably infer that Webster's consciousness of guilt was related to Dudley's murder. "Guilty knowledge is a circumstance to be considered, but general guilty knowledge cannot suffice to prove a specific crime." *Porter v. Commonwealth*, 17 Va. App. 58, 63 (1993).

The evidence is insufficient to sustain Webster's convictions because the circumstances proved are consistent with Webster's innocence and do not concur to form an unbroken chain linking Webster to Dudley's murder beyond a reasonable doubt. At most, the evidence as a whole—viewed in the light most favorable to the Commonwealth—creates a strong suspicion that Webster killed Dudley. "Suspicion, however, no matter how strong, is insufficient to sustain a criminal conviction." *Stover*, 222 Va. at 624. Therefore, I would reverse Webster's convictions and dismiss the indictments. Accordingly, I respectfully dissent.